IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMCAST OF ILLINOIS X, LLC, an Illinois Limited Liability Company, | ) ) ) | 8:03CV311 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| MULTI-VISION ELECTRONICS, INC., and RON ABBOUD, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on cross-motions for summary judgment filed by defendants Ron Abboud and Multi-Vision Electronics, Inc. ("Multi-Vision"), Filing No. 48 and plaintiff Comcast of Illinois X ("Comcast"), Filing No. 47. The parties have filed briefs and evidence with the motions and various objections to the motions. Filing Nos. 50, 51, 52, 53, 54, and 55. This is an action for declaratory and injunctive relief and monetary damages pursuant to the Cable Communications Act, 47 U.S.C. § 553 *et seq.* ("the Cable Act"), the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* ("the Digital Act"), and for unjust enrichment and imposition of a constructive trust under Nebraska law. Comcast alleges that the defendants manufactured, sold or otherwise distributed cable television descrambling equipment used to "pirate" its cable television programming services, in violation of the Acts. *See* Filing No. 1, Complaint.

Comcast seeks partial summary judgment on liability for violations of the Cable Act, but concedes that dismissal of its claims under the Digital Millennium Copyright Act is appropriate. *See* Filing No. 51, Response at 3. Abboud and Multi-Vision seek dismissal of Comcast's claims as barred by the statute of limitations and for failure to state a claim. Comcast alleges that beginning sometime in 1991 until at least sometime in 1999, Multi-

Vision manufactured, sold, and distributed cable television descrambling equipment that others used to intercept the plaintiff's scrambled programming services, in violation of federal law. Complaint at 6. Comcast contends that the undisputed evidence shows that it is entitled to judgment as a matter of law. The court has reviewed the record and the parties' submissions and finds that Comcast's motion for summary judgment should be granted and defendants' motion should be denied.

## I. BACKGROUND

The uncontroverted evidence shows that defendant Multi-Vision, a dissolved Nebraska corporation, d/b/a Cable Network Company, a/k/a Cable Network, had a business address of 3208 S. 121st Street, Omaha, NE 68144, and/or 12105 West Center Road, Suite 364, Omaha, NE 68144. *See* Filing No. 1, Complaint at 1; Filing No. 18, Answer at 1 (admitting allegations of Complaint ¶¶ 3 & 4). Defendant Ronald J. Abboud is a resident of the State of Nebraska with a residential address at 4818 S. 189th Street, Omaha, NE 68135, and/or 3316 N. 180th Street, Omaha, NE 68101. *Id.* Defendant Ronald Abboud was the President, Vice-President, and Secretary of Multi-Vision, which had a registered office address of 3208 S. 121st Street, Omaha, NE 68144. *Id.* Ron Abboud was the sole shareholder and owner of defendant Multi-Vision. *See* Filing No. 47, Index of Evidence, Exhibit ("Ex.") B, Transcript of Deposition of Ron Abboud ("Abboud Dep.") at 16. He was the only officer of the company. *Id.* Ron Abboud is the brother of Steven M. Abboud. *Id.* at 12. He is also related to several others who are or were involved in litigation involving cable descramblers in this and other courts. *See* Abboud Dep. at 38 (related to Gene Abboud); *United States v. Abboud*, 273 F.3d 763 (8th Cir. 2001); *Abboud v. Time Warner Ent. Co., L.P.*, 129 F.3d 121 (8th Cir. 1997); *Time Warner Cable of New*

*York City v. M.D. Electronics*, Inc., 101 F.3d 278 (2d Cir. 1996); *Comcast of Illinois X, LLC v. Platinum Electronics*, Inc., 336 F. Supp, 957 (D. Neb. 2004); *United States v. United Imports Corp.*, 165 F. Supp. 2d 969 (D. Neb. 2000); *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F. Supp. 1019 (D. Neb. 1991). Ron Abboud was also the sole owner of a company known as Imperial Empire Trading Corporation ("Imperial Empire") in the 1980s. Imperial Empire was in the business of importing and exporting electronic equipment, including cable equipment. Abboud Dep. at 23; *see also Imperial Empire Trading Co. Inc. v. City of Omaha*, 524 N.W.2d 314 (1994).

Defendants admit that prior to 1998, Multi-Vision was in the business of selling certain cable boxes to the general public. Filing No. 18, Answer at 2. Defendant Multi-Vision sold electronics, including cable splitters, remote controls, CATV set-up boxes, and immunizers. Abboud Dep. at 33. Multi-Vision sold Stargate, Intelestar, General Instrument, Scientific Atlanta and Zenith cable boxes. *Id.* at 37. Multi-Vision purchased cable boxes from United Imports Corporation. *Id.* at 39. United Imports Corporation and Gene Abboud were criminally prosecuted for selling illegal cable descrambling equipment. *See United States v. United Imports Corp.,* 165 F. Supp. 2d 969 (D. Neb. 2000). Multi-Vision also bought cable boxes from Basic Electrical Supply in Schaumberg, Illinois. *Id.* at 80 & Abboud Deposition Exhibit ("Abboud Dep. Ex.") 6. The owner of Basic Electrical Supply, Tommy La Mantia, was criminally indicted and entered a plea of guilty to a charge of distribution of illegal cable equipment in New Jersey. *See United States v. La Mantia*, No. 2:00-cr-70 (D.N.J. Feb. 7, 2000). Defendants also sold cable boxes to Modern Electronics, owned by Steve Finn. Abboud Dep. at 57-58; Abboud Dep. Ex. 4. Abboud testified that the purpose of the cable boxes was to allow the consumer to get enhanced

features such as remote control or volume control capabilities.  Abboud Dep. at 45.  The invoices and order forms for cable boxes that Multi-Vision sold contain purported disclaimers of liability for unauthorized use.  Abboud Dep. Exs. 4 & 5.  The cable boxes sold by Multi-Vision were capable of descrambling premium cable services.  Killian Aff. at 7; Abboud Dep. Ex. 9.

Comcast owns and operates cable television systems in several states.  Killian Aff. at 2.  Comcast offers cable television programming to customers or "subscribers" for a monthly fee.  *Id.*  Subscribers purchase additional premium programming services and pay-per-view programming for additional fees.  *Id.* at 2-3.  Each subscriber is entitled to receive only the level of programming that they have purchased.  *Id.*  Comcast encodes or "scrambles" its programming signals and provides its subscribers with devices known as "converter boxes" to decode the scrambled signals and enable subscribers to view the programming that they purchased.  *Id.* at 3.  Under Comcast's system, programming that has not been purchased will remain scrambled and cannot be viewed.  *Id.*  Comcast's system is "addressable," which means that Comcast programs each subscriber's converter box to receive only purchased services.  *Id.*  However, unauthorized "pirate" cable descramblers can be installed to allow subscribers to receive cable programming services without paying for them.  *Id.* at 3-4.

Killian is employed by Comcast as a Safety and Security Manager.  Killian Aff. at 1.  While investigating a company known as Platinum Electronics, Inc. ("Platinum"), and an individual named Steven M. Abboud, defendant Ron Abboud's brother, Comcast became aware of cable descrambler sales by a dissolved Nebraska corporation known as Multi-Vision Electronics, Inc.  *Id.* at 4.  Both Platinum and Multi-Vision operated their businesses from 11111 M Street, Omaha, Nebraska 68137.  Abboud Dep. at 119.  Platinum advertised

on the Internet as recently as July 2003.  Killian Aff. at 5; Abboud Dep. Ex. 2 (screenprint dated July 7, 2003).   A judgment has been entered in favor of Comcast against Platinum and Steven Abboud for violations of the Cable Act.  *See Comcast v. Platinum Electronics*, No. 8:03-CV-195, Filing No. 91, Memorandum and Order (September 23, 2004).  As part of its business, Multi-Vision used a "return form" that provides check boxes to identify problems with Multi-Vision's equipment as follows: "Premium stations are scrambled," "Basic Stations are scrambled" and "Some premium stations come in others do not." Abboud Dep. at 89; Abboud Dep. Ex. 9.

Advertisements for cable descramblers from a company named "Multivision Electronics," located at 2730 South 123rd Ct., Suite 126, Omaha, Nebraska 68137, were found in "Nuts and Volts" magazine in February, March and April, 2003.  Killian Aff. Exs. A-1, A-2, and A-3.  The phone number listed in the advertisements was "800-835-2330." *Id.*  As part of his investigation, Richard Killian found that the telephone number "800-835-2330" was cross-referenced to a company called "Multivision," which is listed, along with known distributors of illegal cable descrambling equipment, on a website located at "http://www.falshback.se/library."  Killian Aff. at 7-8; Killian Aff. Ex. 4.  Multivision is listed under the heading "Treason's Phat Product List" and "Cable Descrambler Ordering List." Killian Aff. Ex. 4.

In opposition to Comcast's motion, defendants submit the affidavit of Ron Abboud, stating that Multi-Vision Electronics Inc. was dissolved for lack of payment of occupation taxes on April 19, 1999, and that "[a]t no time did [he] sell cable television converter boxes to members of the general public or tho businesses in [his] personal capacity."  Filing No. 54, Affidavit of Ronald J. Abboud ("Abboud Aff.") at 1.  He states that he did not personally sell television converter boxes after December 31, 1998.  *Id.*  He further states that he was

involved in litigation in Nebraska state courts in *Imperial Empire Trading Corp.*, and relied on the precedent established in that case to support the legality of Multi-Vision's business.[1] *Id.* Ron Abboud also states in his affidavit that Multi-Vision included disclaimers or warnings to its customers "not to use the product in an illegal manner" and that "at no time did Multi-Vision Electronics, Inc., or me personally, ever intend to sell a cable television converter box to a member of the general public, or any business, with the known intent of the purchaser to utilize the product for an illegal use including, but not limited to, obtaining cable television programming from the plaintiff or any other cable television programming provider without paying for the services." *Id.* Defendants have submitted no evidence to refute Comcast's showing that Multi-Vision was in the business of selling cable boxes capable of descrambling cable providers' premium services.

In their motion for a summary judgment of dismissal, defendants argue that Comcast's action is barred under either the statute of limitations or the doctrine of laches. Defendants offer the affidavit of Ron Abboud as well as Comcast's responses to interrogatories and requests for production in support of their statute of limitations defense.

## II.  DISCUSSION

In deciding a motion for summary judgment, the court determines whether the record, when viewed in the light most favorable to the nonmoving party, shows any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* Once the moving party meets the initial burden of showing

---

[1]In that case, involving the City of Omaha's seizure of Abboud's cable boxes as illegal, the Nebraska Supreme Court held that a lawful market existed for the cable boxes. *Imperial Empire,* 524 N.W.2d at 316.

there is no genuine issue of material fact, the nonmoving party may not rest upon the allegations in the pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  The nonmoving party may not merely show that there is some metaphysical doubt as to the material facts, but must show "there is sufficient evidence to support a jury verdict" in the nonmoving party's favor.  *Id.*  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The Cable Act prohibits a "person" from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1) (emphasis added).  The prohibition against "assisting" in intercepting unauthorized transmissions includes the illegal manufacture and sale of "pirate" descrambling devices.  47 U.S.C. § 553(a)(2).  The Act was designed to "protect the revenue of television cable companies from unauthorized reception of their transmissions."  *United States v. Coyle,* 943 F.2d 424, 427 (4th Cir. 1991).  It clearly applies to the sale of cable descramblers—it is "primarily aimed at preventing the . . . distribution of so-called black boxes and other unauthorized converters which permit reception of cable service without paying for the service."  *Storer*

*Communications, Inc., v. Mogel,* 625 F. Supp. 1194, 1198 (S.D. Fla 1985) (discussing legislative history).

Section 553 prohibits sales of cable descramblers if the seller knew or intended that the device would be used for unauthorized reception of cable television programming service. *See, e.g., Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1047 (9th Cir. 1997); *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996); *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1003-05 (2d Cir. 1993); *United States v. Coyle*, 943 F.2d 424, 427 (4th Cir. 1991); *United States v. Gardner*, 860 F.2d 1391, 1398-99 (7th Cir. 1988)*; Intermedia Partners Southeast v. QB Distributors*, *LLC*, 999 F. Supp. 1274, 1281 (D. Minn. 1998)*; Time Warner Cable v. Cable Box Wholesalers, Inc*., 920 F. Supp. 1048 (D. Ariz. 1996)*; Time Warner Cable v. Freedom Electronics, Inc*., 897 F. Supp. 1454, 1459 (S.D. Fla. 1995); *Storer Communications, Inc. v. Mogel,* 625 F. Supp. 1194, 1198 (S.D. Fla. 1985).

Intent or knowledge that a device will be used for unauthorized reception can be inferred from the nature of the "pirate" devices sold. *TKR Cable v. Cable City Corp*., 1996 WL 465508 at *7 (holding that selling non-addressable, "bullet proof" descramblers with installation instructions and representations that the descrambler can get premium and pay-per-view channels can have only one purpose:  "to enable the purchaser to receive and unscramble programming services offered by a cable company without notifying the cable company and without paying for the services"), *aff'd,* 267 F.3d 196 (3rd Cir. 2001). *See also Subscription Television v. Kaufmann,* 606 F. Supp 1540, 1542 (D.D.C. 1985) (finding the only reason to remove the addressable function of a descrambling device is to "enable a user to receive and unscramble an STV signal without notifying the signal provider"); *see also Continental Cablevision, Inc. v. Poll*, 124 F.3d at 1047 (finding the sale

of non-addressable descrambling devices is evidence of seller's intent to assist in the interception of cable services). A "bullet-proof" feature is evidence of an intent to assist in the theft of cable television services. *See United States v. Coyle*, 943 F.2d 424, 425 (4th Cir. 1991) (similar device found to hinder cable companies from discovering the unauthorized use of a descrambler)*; Poll,* 124 F.3d at 1047; *TKR Cable,* 1996 WL 465508 at *7.

With respect to the sale of cable descramblers, a disclaimer that shifts culpability to the ultimate consumer will not shield the sellers from liability. *See United States v. Gardner*, 860 F.2d at 1397 (noting a seller's disclaimer could be found to be "a transparent attempt to deny the patent illegality of the defendant's acts"); *Subscription Television v. Kaufmann*, 606 F. Supp. 1540, 1542-3 (D.D.C. 1985) (finding "worthless" the defendant's "instruction" that the purchaser of a non-addressable decoder should communicate with the signal provider).[2] In fact, a sellers' use of a disclaimer reflects its awareness of the illegality of the business. *See Columbia Cable TV Co. v. McCary,* 954 F. Supp. at 127 (finding that "the disclaimer demonstrates knowledge of the most probable if not only use of the devices"). *See also Poll*, 124 F.3d at 1048 (noting that the fact that a cable box has legal uses does not insulate its seller from civil liability).

Although the Cable Act does not contain a statute of limitations provision, most courts addressing the issue apply the three-year statute of limitations set forth in the Copyright Act, 17 U.S.C. § 507(b). *See Prostar v. Massachi*, 239 F.3d 669 (5th Cir. 2001)*; Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp.2d 958 (N.D. Ill.

---

[2]*See also ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)*; Intermedia Partners Southeast Gen. P'ship,* 999 F. Supp. at 1282;  *Time Warner,* 920 F. Supp. at 1053 (D. Ariz. 1996)*; TKR Cable Co.,* 1996 WL 465508; *Time Warner Cable v. Freedom Electronics*, 897 F. Supp. at 1459; and *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F. Supp. 1019, 1025 (D. Neb. 1991) (involving defendant Joseph Abboud).

2000) (noting congruence of the nature of the causes of action provided by the Cable Act and the Copyright Act and the striking similarity in the remedial framework provided under each statute); *Entertainment by J & J, Inc. v. Tia Maria Mexican Rest. & Cantina*, 97 F. Supp. 2d 775 (S.D. Tex.2000).

"A statute of limitations begins to run once a plaintiff has knowledge which would lead a reasonable person to investigate the possibility that her legal rights had been infringed." *CSC Holding, Inc. v. Redisi*, 309 F.3d 988, 992-993 (7th Cir. 2002) (noting that the modern tendency is to toll statutes of limitations until the plaintiff knew or by reasonable diligence should have known of both the injury and its governing cause). "For criminal penalties, the statute expressly declares that the distribution of each individual device 'shall be deemed a separate violation.'" *Id.* (quoting 47 U.S.C. § 553(b)(3)).  Application of equitable doctrines such as tolling are not similarly foreclosed with respect to a civil action. *See* 47 U.S.C. § 553(c).  Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim; it has its roots in the discovery rule long-applied to fraud cases. *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995).  The doctrine does not require any misconduct or wrongdoing by the defendant. *Id.*  In the context of statutes of limitation, "the doctrine of equitable estoppel, on the other hand, 'comes into play when a defendant takes active steps to prevent a plaintiff from suing on time.'" *Id.* at 1329 (quoting *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135-37 (7th Cir. 1994).  The equitable estoppel inquiry focuses on defendant's conduct. *Dring*, 58 F.3d at 1329.  The continuing violation theory simply allows a plaintiff "to include in his initial complaint allegedly discriminatory acts that occurred before limitations period, provided that at least one of the acts complained of falls

within limitations period." *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 362 (8th Cir. 1997).

The undisputed evidence in this case establishes that the defendants were involved in the sale/distribution of illegal cable descramblers. Defendants' attempt to rely on the disclaimers to shield them from liability and to shift culpability to their customers is misplaced. Instead, the court finds that the disclaimers are clear evidence that defendants knew that the intended uses of the descramblers were illegal. Defendants have presented no evidence to refute Comcast's showing that Multi-Vision sold cable boxes capable of and intended to receive and descramble unauthorized cable services, i.e., premium channels such as HBO, Showtime, etc., as well as pay-per-view movies and events. The evidence presented by Comcast shows that defendants knew or intended that the cable boxes would be used for unauthorized reception of cable television programming.

Defendant's reliance on *Imperial Empire Trading Co., Inc. v. City of Omaha*, 524 N.W.2d at 316, to establish that Section 553 does not proscribe the sale of cable television decoders, is also misplaced. A state court decision has minimal persuasive authority in this context. *See TKR Cable Co. v. Cable City Corp.*, 1996 WL 465508 *7 (D.N.J. July 29, 1996) (noting that the *Imperial Empire* decision involved state law conversion claims asserted by a descrambler seller and did not even mention Section 553 of the Cable Act). Moreover, defendant Ron Abboud's involvement with the *Imperial Empire* litigation as well as his close affiliation with defendants in other cable descrambling cases is evidence of his knowledge of the illegality of the conduct. As noted, the fact that cable boxes may have legitimate uses will not absolve a seller of liability on a showing of intentional or knowing assistance in the interception of cable services without authorization. The court thus finds that the undisputed evidence shows that defendants sold cable descramblers in violation

of 47 U.S.C. § 553, knowing or intending that the devices would be used for unauthorized reception of cable television programming service.

Defendants' statute of limitations argument is similarly unavailing. The statute of limitations is an affirmative defense, on which the defendant bears the burden of proof. *See Ritchey v. Horner*, 244 F. 3d 635, 639 (8th Cir. 2001). In the present case, Comcast has shown that it first discovered the defendants' conduct as a result of discovery undertaken in prosecution of its case against Platinum. Killian Aff. at 4; *see also Comcast of Illinois X, LLC v. TKA Electronics*, 2004 WL 628222 at *3 (D. Neb. 2004)(noting investigation started in February 2003). Defendants have not presented evidence showing that defendants knew or should have known of their conduct at any time prior to February 2001. In fact, evidence in this and other cases, including defendant Ron Abboud's creation of numerous corporate entities, shows that defendant Ron Abboud at least obscured, if not concealed, his activities. This action was filed in August 2003, within the three-year statutory period. Accordingly, under theories of either equitable tolling, equitable estoppel or continuing violation, the court finds that Comcast's action is not barred by the statute of limitations.

This court has addressed and rejected similar arguments by sellers of cable descramblers in related cases. *See Comcast v. TKA Electronics, Inc.*, 2004 WL 628222 (D. Neb. March 30, 2004); *Platinum Electronics*, No. 03-cv-195, Filing No. 91, Memorandum and Order (D. Neb. Sept. 13, 2004). For the reasons stated in those opinions, the court finds defendants contentions are meritless.

Defendants' motion to dismiss Comcast's unjust enrichment and constructive trust claims is denied. Those claims are claims in equity relating to the measure and recovery

of damages.  Those issues can be addressed in connection with proof of damages under 47 U.S.C. § 553.

IT IS ORDERED:

1.  Defendants' motion for summary judgment, Filing No. 48, is granted in part and denied in part.

2.  Defendants' motion for summary judgment is granted with respect to Comcast's claim under the Digital Millennium Act (Count II); Count II of Comcast's complaint is hereby dismissed. Defendants' motion for summary judgment is denied in all other respects.

3.  Comcast's motion for summary judgment, Filing No. 47,  is granted.  A judgment in favor of Comcast and against defendants will be entered in a separate order after a determination of damages.

4.  A hearing before the undersigned on the issue of damages is scheduled for **October 13, 2005, at 3:00 p.m.**, in Courtroom No. 3, Roman L. Hruska U.S. Courthouse, 111 South 18th Plaza, Omaha, Nebraska.

DATED this 8th day of September, 2005.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge