IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMCAST OF ILLINOIS X, | ) | 8:03CV311 |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| MULTI-VISION ELECTRONICS, INC., and RONALD J. ABBOUD, | ) | |
| Defendants. | ) | |

This matter is before the court on the following motions: (1) plaintiff's Motion to Add RJA Guardian Trust and Real Estate MLS to the Judgment Against Ronald J. Abboud, Filing No. 118;[1] (2) plaintiff's Motion for Turnover of Ronald J. Abboud's 99.995% Interest in Empire Holdings, LLC , Filing No. 124; (3) plaintiff's Motion for Turnover of Fraudulently Transferred Assets, Filing No. 139; (4) plaintiff's Motion for Turnover of Ronald J. Abboud's 74,630 Shares of Global Entertainment Holdings/Equities, Inc. Stock, Filing No. 159 (hereinafter, "the collection motions"); and (5) plaintiff's Motion for Sanctions Against Ronald J. Abboud, Filing No. 134.

This action was filed on August 8, 2003. Comcast prevailed on a motion for summary judgment on liability for violations of the Cable Communications Act, 47 U.S.C. § 553, et seq., on September 8, 2005. Filing No. 63. A hearing to determine damages was held on November 21, 2005. Filing No. 71, Minute Entry. Defendants Ronald J. Abboud and Multivision Electronics, Inc. (hereinafter, collectively, "defendant" or "Abboud") did not appear at that hearing, but moved through counsel for a continuance, which was

---

[1] Defendant's motion for an extension of time in which to respond to that motion, Filing No. 127, has been rendered moot by the filing of his response, Filing No. 128.

denied. *Id.* On October 11, 2006, this court entered a final judgment against Abboud in the amount of $2,214,430.00. Filing No. 80. Abboud appealed, Filing No. 85, and the appeal is presently pending. *See Comcast v. Illinois v. Multivision,* Case No. 06-3765 (8th Cir. 2007).

A debtor's exam was held on November 30, 2006. Filing Nos. 115, Minute Entry, 123, Transcript ("Tr."). At the hearing, Abboud testified that he had taken a heavy dose of prescription medication. Tr. at 7-10. The court at that point considered continuing the hearing because of Abboud's questionable mental state, but Comcast elected to go forward with the proceeding. *Id.* at 36-38.

I.  BACKGROUND

In its collection motions, Comcast seeks the following relief: it requests that this court enter an order (1) adding RJA Guardian Trust and Real Estate MLS as parties to the judgment; (2) deeming Comcast the beneficial owner of Ronald J. Abboud's 99.995% interest in Empire Holdings, LLC and ordering Empire Holdings, LLC (through Brent Kuhn and Ronald J. Abboud) to immediately turn over all documentation in their possession, custody or control referring or relating to this LLC; (3) declaring Ronald J. Abboud's transfer of $130,333.59 into RJA Guardian Trust's bank account a fraudulent transfer, and ordering Ronald J. Abboud to pay $130,333.59 to Comcast in partial satisfaction of the judgment; and (4) deeming the plaintiff the beneficial owner of Ronald J. Abboud's 74,630 shares of stock in Global Entertainment Holdings/Equities, Inc., and ordering Ronald J. Abboud to immediately turn over his certificates for these 74,630 shares to the plaintiff, Comcast of Illinois X, LLC, or to complete all necessary documents to obtain a replacement bond through Corporate Stock Transfer, Inc. (and pay any and all applicable fees) in order to obtain Lost Share certificates to turn over to Comcast. Comcast also

seeks a monetary sanction against Abboud for making false assertions in court documents and testimony. It seeks the reasonable attorneys' fees it incurred in connection with responding to the assertions, as well as a fine to deter repetition of Abboud's conduct.

In support of the various collection motions, Comcast has presented evidence that shows that Ronald J. Abboud is the settlor and trustee of the RJA Guardian Trust (hereinafter, "the Trust"). Filing No. 119, plaintiff's Index of Evid., Ex. A, Trust Instrument. The Trust is a revocable trust. *Id.* at 1. The Trust instrument provides that Abboud, as settlor, can "amend, alter, revoke, to terminate" the trust at any time. *Id.* at 2. Comcast has also shown that cash, stock and real estate were transferred out of the Trust in late 2005 and early-to mid 2006. *Id.*, Exs. C & D, Westlaw property transfer record; Filing No. 123, Tr. at 16, 42-43, 62. Ronald J. Abboud testified that he sold or transferred property, including his residence at 3316 North 180th Street, Elkhorn, Nebraska, and property located at 3208 South 121st Street, Omaha Nebraska, out of the RJA Guardian Trust in 2005. Tr. at 42-43. Defendant's mother, Joann Abboud, has admitted, in documents submitted in response to a records subpoena issued by the United States District Court for the Middle District of Florida, that she bought Ronald J. Abboud's interest, titled in the name of the Trust, for $200,000.00 in 2005. Filing No. 140, Index of Evid., Ex. E at 3.

The cash balance of the Trust's account at Perelman-Carley & Associates, $15,609.66, was withdrawn on November 21, 2005 and was deposited by wire into Abboud's individual account at SunTrust Bank in Florida on November 25, 2005. *See* Filing No.119, Index of Evid., Ex. B, Ronald J. Abboud, trustee, transfer instructions; Filing No. 140, Index of Evid., Ex. G, SunTrust Bank records at 2. Abboud's individual account

at SunTrust had no other significant deposits, and all of its funds were withdrawn for various purposes by Ronald J. Abboud.  *See id.*, Ex. G (showing numerous retail purchases).  The current balance of this account is zero.  *Id.; see also* Filing No. 142, Supplemental Index of Evid., Ex. A, SunTrust Bank statements, Ronald J. Abboud account.

The evidence also shows that Abboud maintained an account at SunTrust Bank as trustee of the RJA Guardian Trust.  Filing No. 142, Supplemental Index of Evid., Ex. A, SunTrust Bank statements, trust account.  The Trust account records show an initial deposit of $24,974.42 was deposited on or about March 3, 2006 and total deposits of $130,333.59 between March and November 2006.  *Id.*  Deposit in the amounts of $62,689.20 and $17,490.15 were made in late October and November 2005.  *Id.*  Ronald Abboud withdrew $78,565.00 in November 2005, leaving a balance of $2,009.35.  *Id.*  Most of these transactions were classified as "over-the-counter withdrawals."  *Id.*  Account records show wire transfers of $6,500.00 on October 5, 2006, and $10,000.00 on November 14, 2006.  *See id.*  Documents produced by Abboud's attorneys in response to a records subpoena issued by the United States District Court for the Eastern District of Missouri, show a wire transfer into an account at Merchants Bank and Trust in the same amounts and on the same dates.  Filing No. 140, Index of Evid, Ex. I at 1-2.

The evidence also shows that Empire Holdings, LLC, ("Empire") is registered with the Nebraska Secretary of State as an active Nebraska Domestic Limited Liability Company. Filing No. 125, Index of Evid., Ex. A.  The Articles of Organization filed with the Nebraska Secretary of State in 1994 for Empire Holdings, LLC, list the members (or owners) of the LLC as Ronald J. Abboud and Brent M. Kuhn.  Filing No. 133, Index of Evid., Ex. B., Articles of Organization at 2.  In response to garnishment interrogatories,

Empire's registered agent, Brent Kuhn, responded that he had $8.71 in a trust account for Ron Abboud and that funds were "set off against balance due for attorneys fees and costs." *Id.,* Ex. C.  In correspondence to Comcast's counsel on November 14, 2006, Kuhn wrote, "I understand that I personally may have a interest in said entity for less than one percent (1%) or less than one-half percent (1/2%) on the initial records and/or financial records of the entity," but that he had "previously requested that Mr. Abboud remove me from the ownership records of the entity." *Id.*, Ex. D.  Mr. Kuhn produced a single-page document entitled "Certificate of Authorization and Resolution for Empire Holdings, LLC," dated April 20, 2006.  *Id.*, Ex. E.  The document relates that Ronald J. Abboud has a 99.99% interest in the company and is its managing member.  *Id.*  It also refers to a purchase/sale agreement for property located at 3020 Leavenworth Street and authorizes Abboud to "complete any and all acts necessary to finalize the aforesaid Purchase/Sales Agreement and complete the sales contemplated thereunder and directed to execute any and all documents to complete said sale on such terms as he deems acceptable."  *Id.*  Empire's tax records also show that Ronald J. Abboud owns 99.995% of this LLC.  *Id.,* Ex. F, 2003 Schedule K-1.

Other evidence shows that Ronald J. Abboud executed a Warranty Deed on behalf of Empire Holdings, LLC, as its "Member Authorized Representative," in November 2005, conveying property at 3020 Leavenworth St., Omaha, Nebraska, to Iglesia Pentecostes Roca de Salvacion  ("Iglesia") for consideration of one dollar.  Filing No. 133, Index of Evid., Ex. C at 1.  A "Corrected Warranty Deed" shows that Empire's address is the same as Abboud's home address, 3316 North 180th Street, Elkhorn, Nebraska.  *Id.* at 2.  A deed of trust dated March 16, 2006, shows that the real estate secures "payment in the principal

5

sum of $290,000 with interest evidenced by a promissory note executed by Iglesia "delivered and payable to the beneficiary [Empire Park, LLC]." *Id.* at 3.

Evidence produced Global Entertainment Holdings/Equities, Inc. ("Global Entertainment") in response to a subpoena shows Ronald J. Abboud owned "223,889 free standing shares" on August 24, 2006. *See* Filing No. 160, Index of Evid. Ex. C, Correspondence dated February 13, 2007. Evidence in the form of a press release dated September 20, 2007, shows that Global Entertainment completed a sale of its assets and authorized a 3-to-1 reverse stock split, resulting in Ronald J. Abboud's ownership of 74,630 shares (223,889 divided by 3 = 74,630). *Id.*, Ex. D. The press release indicates that, on completion of the asset purchase agreement, Global Entertainment intended to complete a share exchange agreement with Bayshore Media Group, resulting in a reverse merger with Bayshore Media Group as the surviving entity. *Id.* The response of Global Entertainment's transfer agent, Corporate Stock Transfer, to a records subpoena shows that Ronald J. Abboud, Trustee RJA Guardian Trust dated 3/31/95, received dividend payments in the amount of $26,866.80 and a nondividend distribution of $35,822.40 in 2006. *Id.,* Exs. E, subpoena, and F, 2006 Form 1099-DIV. Comcast has also shown that defendant Abboud operates a sole proprietorship known as Real Estate MLS and uses that trade name to conduct real estate business in Nebraska. Abboud recently renewed his annual license with the Nebraska Real Estate Commission. Filing No. 119, Index of Evid., Exs. F, Real Estate License renewal.

In opposition to the collection motions, Abboud first asserts that this court has been divested of jurisdiction by virtue of his appeal of the judgment to the Eighth Circuit Court of Appeals. Abboud also asserts that the evidence submitted by Comcast is not properly

6

authenticated, and also contends that Comcast has not demonstrated that the transfers of funds into and out of the RJA Guardian Trust account at SunTrust bank were made without valuable consideration, that Abboud, individually, was the source of funds transferred into the trust, or that withdrawals from the trust were made or used by Abboud.[2] Abboud also denies that he owns any Global Entertainment stock, contending that it is owned by the Trust. Abboud has not submitted any evidence in support of his position.

In its motion for sanctions, Comcast contends that Ronald J. Abboud made blatantly false representations to this court on at least two separate occasions in an attempt to delay these proceedings and to force Comcast to litigate collection issues in Florida rather than Nebraska. It contends that Abboud falsely represented that ill health prevented his travel to Nebraska. In opposition to the motion for sanctions, Abboud argues that Comcast cannot be heard to complain about statements made at the debtor's exam when it elected to proceed with the exam even though Abboud stated that he was under the influence of medication.

II. DISCUSSION

A threshold issue is jurisdiction. Generally, an appeal to the circuit court divests the district court of jurisdiction as to those issues involved in the appeal. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 378-79 (1985); *Board of Educ. v. Missouri*, 936 F.2d 993, 995 (8th Cir. 1991). However, there are several exceptions to this rule. A district court retains jurisdiction over collateral matters, such as attorneys' fees and costs while an appeal is pending. *Peters v. Jax*, 187 F.3d 829, 833 n. 2 (8th Cir. 1999). A district court may also continue to assert jurisdiction where the court supervises a

---

[2] Although Comcast has presented evidence of other transfers, it only asks at this time that transfers amounting to $130,333.59 be set aside.

continuing course of conduct between the parties. *In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 375 (8th Cir. 1996). In addition, a district court retains jurisdiction to the extent necessary to enforce a judgment that has not been stayed. *Id.* Moreover, because sanctions are collateral to the merits of the case, sanctions may properly be considered by the district court even when the merits are no longer before it. *Gunacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998).

A federal court may assert ancillary jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 379-80 (1994). To this end, the Supreme Court has approved the use of ancillary jurisdiction "over a broad range of supplementary proceedings . . . to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *See Peacock v. Thomas,* 516 U.S. 349, 356 (1996).

Such jurisdiction, however, may not extend "beyond attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 357 (stating that ancillary jurisdiction cannot be invoked "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment"); *see Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc.,* 104 F.3d 1050, 1055 n.2 (8th Cir. 1997) (noting impropriety of piercing corporate veil to enforce a judgment against an individual not liable for the underlying violation). Moreover, due process concerns are implicated when a party sought to be added postjudgment has not had an opportunity to appear and defend himself against imposition of liability. *Nelson v. Adams USA,* Inc., 529 U.S. 460, 468 (2000).

The Federal Rules provide that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Accordingly, a party can be added sua sponte by the court after judgment for remedial purposes, so long as the party is given sufficient notice and an opportunity to defend its interests. *Mullaney v. Anderson,* 342 U.S. 415, 417 (1952) (adding party under Rule 21, noting that "[t]o grant the motion merely puts the principal, the real party in interest, in the position of his avowed agent"); *Du Shane v. Conlisk,* 583 F.2d 965, 967 (7th Cir. 1978).

In the absence of a controlling federal statute, a federal district court has same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law. *H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc.,* 994 F.2d 476, 477 (8th Cir. 1993) (recognizing the availability of a creditor's bill in equity under state law); *United States ex rel. Goldman v. Meredith,* 596 F.2d 1353, 1357 (8th Cir. 1979); Fed. R. Civ. P. 69(a).

Nebraska law provides a means whereby a creditor can call upon the equitable powers of the court to enforce the satisfaction of judgments by means of equitable execution when execution at law cannot be obtained. Neb. Rev. Stat. § 25-1564; *Doksansky v. Norwest Bank Nebraska, N.A.,* 615 N.W.2d 104, 108 (Neb. 2000); *see also* H.H. Robertson Co., 994 F.2d at 477 (stating that a "creditor's bill enables a judgment creditor to trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services" even though judgment had not been obtained against "alter

9

ego" related corporations in original action) (internal quotes omitted) (applying Missouri law).

Nebraska recognizes two types of creditor's bills: the first is used to reach equitable assets or property of a debtor on which execution at law cannot be levied; and the second is used in aid of an execution at law, as to set aside an encumbrance or a transfer of property made to defraud creditors. *Id.*; *First Nat. Bank v. Daggett,* 497 N.W.2d 358, 362 (1993). A creditor's bill attacking the validity of a trust falls under the first category, an "equitable assets" bill. *First Nat. Bank v. Daggett,* 497 N.W.2d at 738. There are three requirements for an equitable-assets creditor's bill: (1) the creditor must have a judgment against the debtor; (2) "the creditor must 'allege and show that he has exhausted his remedy at law,' i.e., the creditor must show that execution has not satisfied the judgment;" and (3) the debtor must have some interest in property that the creditor is unable to reach through execution. *Id.*

The Nebraska Uniform Fraudulent Transfer Act provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;[3] or

---

[3] In determining actual intent, the court should consider, among other factors, whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed;(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienholder or who transferred the assets to an insider of the debtor. Neb. Rev. Stat. § 36-705(b); *see also Eli's, Inc. v. Lemen,* 591 N.W.2d 543 (Neb. 1999).

>    (2)   without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>          (i)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>          (ii)   intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Neb. Rev. Stat. § 36-705. In an action to set aside a fraudulent transfer, the burden of proof is on a creditor to prove, by clear and convincing evidence that fraud existed in the questioned transaction. *Parker v. Parker,* 268 Neb. 187, 195 (Neb. 2004). Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Id.*

The alter ego doctrine, as developed under corporate law, provides that the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud. *Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc.,* 104 F.3d at 1055; *In re B.J. McAdams, Inc.,* 66 F.3d 931, 937 (8th Cir.1995). When a corporation is or becomes the mere alter ego, or business conduit, of a person, it may be disregarded.[4]  *Carpenter Paper Co. v. Lakin Meat Processors,* 435 N.W.2d 179, 183 (1989). Moreover, under Nebraska law, during the lifetime of the settlor, the property of

---

[4]Some of the factors that are relevant in determining whether to disregard a corporate entity on the basis of fraud are:  (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity. *Carpenter Paper,* 435 N.W.2d at 183.

11

a revocable trust is subject to claims of the settlor's creditors. Neb. Rev. Stat. § 30-3850.

A sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance. *See also International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827-28 (1994) (noting that whether a contempt is civil or criminal turns on the "character and purpose" of the sanction involved: a contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant," but criminal if the sentence is punitive, to vindicate the authority of the court). A district court is provided broad discretion in fashioning an appropriate remedy for contempt. *See McBride v. Coleman*, 955 F.2d 571, 579 (1992).

### III. ANALYSIS

Comcast's various collection motions are connected and interdependent. The most important component of the relief Comcast seeks involves whether or not Comcast can reach the assets of the RJA Guardian Trust in satisfaction of the judgment against Abboud. Clearly, it can. The Trust is revocable and is not beyond the reach of Abboud's creditors since Abboud is settlor of the Trust. It does not appear necessary to add the Trust as a party to the judgment in order to effectuate this result. Whether or not transfers between the Trust and Abboud, individually, are set aside as fraudulent is irrelevant, since the remaining assets of both Abboud, individually, and the Trust are subject to levy by Comcast.

Transfers of the Trust's property to others after, or in anticipation of, the entry of judgment in this case are another matter. Comcast's motion to add the RJA Guardian

Trust and MLS Real Estate as parties to the action can be construed as an equitable claim in the nature of a creditor's bill. The relief Comcast seeks is a declaration that the Trust is void and that Abboud retained equitable ownership of the assets of the Trust. It seeks a mechanism by which it can reach the assets of the Trust to satisfy its judgment. Comcast has satisfied the conditions required for entry of this equitable relief. Comcast has a judgment against the debtor, Comcast's attempts at execution have not satisfied the judgment, and Abboud has interests in the property of the Trust that the creditor is unable to reach through execution. Comcast has presented unrefuted evidence that Abboud retained unfettered discretion and control over the assets of the Trust. Transfers to the Trust were made after the instigation of this lawsuit and Abboud, as trustee, transferred funds from the Trust to his own benefit. Many of those transfers followed closely on the heels of the entry of judgment in this case. The court finds Abboud's conduct is fraught with the indicia of fraud.

Accordingly, the court finds that the RJA Guardian Trust cannot be used to shield assets from Abboud's creditors. The transfers of the assets of the Trust after the entry of judgment in this case are fraudulent conveyances and must be set aside.[5] Comcast has shown that the transactions were intended to hinder, delay or defraud plaintiff's attempts to collect on the final judgment. Importantly, Abboud has submitted no evidence to controvert Comcast's showing.

The documents produced by Global and Corporate Stock Transfer, demonstrate that the Trust presently owns 74,630 shares of stock in Global Entertainment

---

[5] The court questions the utility of ordering the defendant to pay Comcast $130,333.59 in partial satisfaction of the judgment. The court has entered judgment against him for over two million dollars. The finding that transfers from the Trust were fraudulent conveyances should enable the creditor to levy on those assets, to the extent they can be traced and are available.

13

Holdings/Equities, Inc.  Abboud has not refuted that evidence.  Those shares are subject to Comcast's creditor's claims.  Accordingly the court will deem Comcast the beneficial owner of Ronald J. Abboud's 74,630 shares of stock in Global Entertainment Holdings/Equities, Inc., and will order Ronald J. Abboud to immediately turn those shares over to Comcast or to otherwise effectuate the transfer of ownership.

Further, the court will exercise its equitable power to disregard the legal fiction of the corporate identity of Empire Holdings, LLC.  The evidence shows that a 99.95 % interest in that company is owned by Ronald J. Abboud.  That interest is also subject to execution.  Comcast will be deemed the beneficial owner of Empire Holdings, LLC, in partial satisfaction of the judgment.  Also, Abboud and Brent Kuhn will be ordered to immediately turn over all documents that relate to the LLC.

Although the court finds Abboud has been less than forthcoming in this case, the court will not impose sanctions at this time.  Comcast elected to proceed with the debtor's exam in spite of Abboud's admitted mental state.  Accordingly,

IT IS HEREBY ORDERED:

1.   Plaintiff's Motion to Add RJA Guardian Trust and Real Estate MLS to the Judgment Against Ronald J. Abboud (Filing No. 118) is denied as not necessary to effectuate the judgment.  The court finds the RJA Guardian Trust is a revocable trust that is subject to the claims of the creditors of Ronald J. Abboud.

2.  Plaintiff's Motion for Turnover of Ronald J. Abboud's 99.995% Interest in Empire Holdings, LLC (Filing No. 124) is granted.  Comcast is deemed the beneficial owner of Ronald J. Abboud's 99.995% interest in Empire Holdings, LLC.  Brent Kuhn and Ronald

14

J. Abboud shall immediately provide to Comcast all documentation in their possession, custody or control referring or relating to this LLC.

3. Plaintiff's Motion for Turnover of Fraudulently Transferred Assets (Filing No. 139) is granted. The transfers of funds from the RJA Guardian Trust account at SunTrust Bank are fraudulent conveyances and should be set aside.

4. Plaintiff's Motion for Turnover of Ronald J. Abboud's 74,630 Shares of Global Entertainment Holdings/Equities, Inc. Stock (Filing No. 159) is granted. Comcast is deemed the beneficial owner of Ronald J. Abboud's or the RJA Guardian Trust's 74,630 shares of stock in Global Entertainment Holdings/Equities, Inc. Ronald J. Abboud is ordered to immediately turn over his certificate or certificates for these 74,630 shares to Comcast, or to complete all necessary documents to obtain a replacement bond through Corporate Stock Transfer, Inc. (and pay any and all applicable fees) in order to obtain Lost Share Certificates to turn over to Comcast.

5. Plaintiff's Motion for Sanctions Against Ronald J. Abboud (Filing No. 134) is denied.

6. Defendants' motion for an extension of time (Filing No. 127) is denied as moot.

DATED this 9th day of May, 2007.

BY THE COURT:

**s/Joseph F. Bataillon**
Chief United States District Judge